**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

INTEVA PRODUCTS, LLC,

Plaintiff,

Case No. 2:26-cv-11612

vs.

ADVANEX AMERICAS INC.,

Defendant.

**BODMAN PLC**
Joseph J. Shannon (P38041)
Emily A. Cross (P85911)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
*Attorneys for Inteva Products, LLC*

# COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

Plaintiff Inteva Products, LLC ("Inteva") complains against defendant Advanex Americas Inc. ("Advanex") as follows:

## SUMMARY OF ACTION

1. Inteva is a tier 1 automotive supplier of engineered components and systems for the automotive industry, including closure systems, interior systems, and motors and electronics.

2. Advanex is a tier 2 manufacturer of custom springs, some of which are incorporated into products and assemblies used in the automotive industry.

3. Inteva purchased certain unique springs from Advanex, and used the springs in various components it manufactured for automotive door latching systems.

4. Advanex provided the springs under a fixed-price requirements contract, based on Inteva's purchase order providing for supply through December 2025 for most parts covered by the purchase order, and May 2029 for certain other parts.

5. Advanex was contractually obligated to supply the parts covered by the purchase order for the time frame specified in the purchase order.

6. Advanex breached its contract with Inteva by, among other things, supplying springs that failed to meet the required specifications and were defective.

7. Specifically, Advanex supplied non-conforming versions of part number "16897422 Rev 001" (the "Springs").

8. As of the date of this Complaint, 4,695 warranty claims have been submitted based on Advanex's non-conforming Springs. Additionally, at this time, 48,670 vehicles have been inspected and 13,907 latches have been replaced as part of a warranty campaign. These warranty claims and campaign costs total $1,451,114 and will continue to grow.

9. Inteva has also incurred additional costs as a result of Advanex's nonconforming Springs, which as of the date of this Complaint total $430,831, exclusive of attorneys' fees and costs.

10. Advanex has refused to reimburse Inteva for the outstanding warranty claims, campaign costs, and other damages relating to the Springs covered by the Purchase Order.

11. Inteva is entitled to damages for Advanex's breaches and declaratory relief declaring that Advanex is liable for all costs, expenses, damages, and attorney fees Inteva has incurred as of the date of the filing of this Complaint, and all costs, expenses, damages, and attorney fees Inteva incurs in the future, as a result of Advanex's breaches.

## PARTIES, JURISDICTION AND VENUE

12. Inteva is a Delaware limited liability company with its headquarters at 1401 Crooks Road, Troy, MI 48084. Its sole member is The Renco Group, Inc., a New York corporation with its principal place of business in New York. For purposes of diversity jurisdiction, Inteva is a citizen of New York.

13. Advanex is a California corporation with its principal office and mailing address at 514 Hester Dr. White House, TN 37188. Its registered agent's address is listed as 1260 N Sumner Rd, Bethpage, TN 37022. Thus, Advanex is a citizen of California and Tennessee for purposes of diversity jurisdiction.

14. The amount in controversy exceeds $75,000, exclusive of interest and costs.

15. This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332. There is complete diversity between the parties because this dispute is between a plaintiff that is a citizen of New York and the defendant is a citizen of California and Tennessee. Also, the amount in controversy exceeds $75,000, exclusive of costs and interest.

16. This Court has personal jurisdiction over the defendant because it specifically consented to the personal jurisdiction of this Court in the contract at issue and it conducts business within the state of Michigan.

17. The claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, and the general legal and equitable powers of this Court.

18. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(3) because defendant is subject to this Court's personal jurisdiction.

19. This matter is otherwise within this Court's jurisdiction.

## BACKGROUND

20. The parties' contract was formed when Inteva issued Purchase Order UM2001690 (the "Purchase Order"; Exhibit A)[1] to Advanex and Advanex accepted it through performance. The Purchase Order covers 24 different springs.

21. Included in the 24 different parts covered by the Purchase Order is part number "16897422 Rev 001" which is described in the Purchase Order as "Latch Housing RH." Exhibit A, line item 7. These are the Springs at issue.

22. The Purchase Order incorporates the Inteva General Terms and Conditions (the "Inteva Terms"; Exhibit B) by reference and the Inteva Terms provide that a supplier accepts a Purchase Order when it begins performing under it without objecting to the terms of the Purchase Order in writing within ten (10) days. (See Exhibit B, §1.) In this case, Advanex's representative accepted the Inteva Terms by signing and affixing Advanex's seal to them on the first and last pages. (See Exhibit B, pp. 1, 18.)

23. Advanex also performed under the Purchase Order without objecting to its provisions within the prescribed ten (10) days. It thus accepted the Purchase Order (and all provisions incorporated by reference into the Purchase Order) and is legally bound to them.

[1] Pricing has been redacted from the exhibits because it is confidential business information. Defendant has unredacted copies of these exhibits and Inteva can deliver unredacted copies to the Court for an in-camera review if necessary.

24. Under the Purchase Order and the Inteva Terms, Advanex was obligated to supply the Springs at the agreed-upon price for the time periods specified in the Purchase Order. Advanex's supply obligation for the Springs extended through December 31, 2025.

25. The parties' contractual rights and obligations to each other concerning the supply of parts, including the Springs, are memorialized in the Purchase Order, the Inteva Terms and the Inteva Supplier Requirements Manual (the "Manual," which is also incorporated by reference; Exhibit C).

26. The Inteva Terms include a "Quality and Inspection" provision which requires that Advanex supply Springs that satisfy all quality requirements, and states, in part:

> Supplier will participate in Purchaser's supplier quality and development program(s) and comply with all engineering release and validation requirements and procedures, including Purchaser's production part approval processes ("PPAP"), which Purchaser specifies from time to time. Exhibit B, §8.

27. Additionally, the Inteva Terms include a "Shipping" provision which defines the contractual rights and obligations of the parties concerning supply of the Springs as follows:

> [Advanex] will deliver Products and Services in strict accordance with the Contract terms. Time is of the essence with respect to all delivery schedules [Inteva] establishes. Exhibit B, §5.

28. The Inteva Terms also include a "Warranty" provision which requires Advanex to supply Springs that meet the following warranty obligations:

> ***A. General.*** Supplier warrants to Purchaser that the Products and/or Services will (a) conform to the then current release or revision level (based on the date [Inteva's] release is issued to [Advanex]) of [Inteva's] applicable specifications and drawings, (b) conform to all samples, descriptions, brochures and manuals furnished by [Advanex] or [Inteva], (c) be merchantable, (d) be of good material and workmanship, (e) be free from defect in workmanship and materials, (f) be fit and sufficient for the particular purposes intended by [Inteva] and any customer of [Inteva], and (g) be performed in a professional and efficient manner with care, skill, and diligence in accordance with the highest standards of accuracy, quality, completeness, timeliness, and responsiveness provided by other well-managed companies performing services similar to the Services. [Advanex] further warrants that [Advanex] will transfer to [Inteva] ownership and good title to Products delivered and Services provided, free of all liens, encumbrances, and rights of third parties (except those created by [Inteva]).
>
> * * *
>
> **C. *Remedies and Damages*.** If any Products or Services are reasonably determined (including by use of statistical analysis or other sampling methodology) to fail to conform to the warranties set forth in the Contract, [Advanex] shall reimburse [Inteva] for all reasonable losses, costs and damages caused by such nonconforming Products and Services. Such costs and damages may include, without limitation, costs, expenses and losses of [Inteva] and/or its customers arising from (i) inspection, sorting, repair or replacement of any nonconforming Products or any system or component that incorporates such nonconforming Products, (ii) production interruptions or slowdowns, (iii) offlining of vehicles or component systems, and (iv) field service campaigns and other corrective service actions, including, without limitation, the amounts paid to distributors and dealers for materials and replacement parts (including reasonable markup to recover administrative costs or other capital expenses) and the labor costs to perform such work.

29. The Inteva Terms also require Advanex to indemnify Inteva for any costs and expenses related to defects in the Springs, as set forth in the "Product Liability" provision as follows:

> Supplier will indemnify and defend [Inteva] against third-party claims or demands for injury or death to persons, property damage, economic loss, and any resulting damages, losses, costs, and expenses (including reasonable legal fees), if and to the extent caused by [Advanex's] (or any of Supplier's suppliers or contractors) defective design or manufacture of Products or provision of Services regardless of whether the claim or demand arises under tort, contract, strict liability, or other legal theories, services or its negligent acts or omissions in its performance under the Contract. This Section 11 will not apply to the extent that the injury, loss, or damage results from (1) [Inteva's] specification of materials in the Products, (2) [Inteva's] design of the Products, or (3) any alteration or improper repair, maintenance, handling, or installation by any party other than [Advanex]. Exhibit B, §11.

30. The drawings for the Springs included precise dimensions to be used by Advanex during production in order to meet performance requirements for the Springs.

31. However, Advanex produced non-conforming Springs that included a leg bend that allowed the spring leg to rise on the coupling lever post.







32. In this position, the lever cannot return to the unlocked position and the right side doors (front and rear) cannot be opened from outside the vehicle after being unlocked electrically until the spring is repositioned.

33. At this time, 4,695 warranty claims have been submitted based on Advanex's non-conforming Springs. Additionally, at this time, 48,670 vehicles have been inspected and 13,907 latches have been replaced as part of the campaign.

34. After testing and review by Inteva, it was determined that the warranty issues with the latching systems were caused by Advanex's failure to meet the dimensions and specifications for the Springs. Upon information and belief, the Spring leg was pinched and pushed out during Advanex's manufacturing operation.

35. Thus, the warranty issues with the latching systems were caused by Advanex's breach of the Purchase Order, including the warranties included in the Inteva Terms.

36. As of the date of this Complaint, Inteva has incurred warranty claims and campaign costs related to the Advanex Springs totaling $1,451,114.

37. At this time, Inteva is also aware of additional projected warranty claims and campaign costs totaling $212,055.

38. The exact exposure of the warranty claims and campaign costs is expected to grow.

39. In accordance with the Inteva Terms, Advanex must indemnify Inteva for any costs, expenses, damages, related to the warranty issues with the Springs.

40. Inteva has also incurred other damages compensable under the terms of the Purchase Order and the Inteva Terms, including, among others, plant-level costs, internal administrative expenses, legal fees, and other costs. As of the date of this Complaint, these other costs total $430,831, exclusive of attorneys' fees and costs.

41. Inteva notified Advanex of the warranty issues with the latching systems and that such issues were caused by defects in the Springs. Inteva informed Advanex of the status of its investigation of the defects and its dealings with its customer related to the defects.

42. Inteva supplied Advanex with samples of the defective Springs to analyze and also provided data from Inteva's own analysis. However, Advanex refused to acknowledge liability for the defective Springs.

43. On August 28, 2024, Inteva sent Advanex a commercial demand letter (the "Letter"; Exhibit D) which proposed that the parties meet to discuss the process to move forward with indemnification, and reimbursement for Inteva's costs and expenses.

44. The Letter requested a response by September 6, 2024.

45. To date, Advanex has failed to indemnify Inteva or take any responsibility for its defective Springs.

46. Per Advanex's request, spring warranty samples were delivered to Advanex on October 4, 2024.

47. Inteva kept Advanex informed throughout its investigation. Notably, Advanex did not assert any legitimate defense to its indemnification obligation.

48. Despite Inteva's notice to Advanex that it was in breach of the parties' contract, Advanex failed to cure its breaches.

49. Inteva is entitled to recover from Advanex the damages it incurred, and any damages it incurs in the future, as a direct and proximate result of Advanex's breach of contract and failure to comply with the express and implied warranties in the contract.

## COUNT I – BREACH OF CONTRACT

50. Inteva incorporates all prior paragraphs of its complaint as if set forth here fully.

51. As discussed above, the Purchase Order is a valid contract between Inteva and Advanex, that is binding on Advanex.

52. Through the Purchase Order between Inteva and Advanex, Advanex is subject to binding contractual obligations set forth in the Inteva Terms.

53. Under the Purchase Order, Advanex was obligated to deliver conforming and defect-free Springs to Inteva that satisfied Advanex's contractual warranties.

54. Advanex delivered to Inteva defective springs that included a leg bend that allowed the spring leg to rise on the coupling lever post.

55. Each delivery of defective Springs by Advanex was a material breach of its obligations pursuant to the Inteva Terms.

56. Under Section 27 of the Inteva Terms, Advanex is liable for all costs, expenses, damages, and attorney fees incurred by Inteva with respect to the warranty claims and campaigns.

57. As a direct and proximate result of Advanex's supply of defective Springs, Inteva has suffered damages, and continues to suffer damages, including, but not limited to, warranty liability, sorting costs, harm to its reputation in the

marketplace, loss of profits, diminution of value, costs associated with identifying and correcting the failures caused by the defective Springs and attorneys' fees and expenses under the contract, in an amount to be proven at trial, but certainly in excess of $1,881,945.

## COUNT II – BREACH OF EXPRESS WARRANTIES (NON-CONFORMING GOODS)

58. Inteva incorporates all prior paragraphs of its complaint as if set forth here fully.

59. Pursuant to Section 10 of the Inteva Terms, Advanex expressly warranted the Springs would be free from defects, be fit for the specific purpose intended by Inteva and any customer of Inteva, and conform to specifications, drawings, samples, and other applicable descriptions. Exhibit B, §10(A).

60. Advanex further agreed that the Springs would comply with Inteva's quality requirements. Exhibit B, §8.

61. The express warranties were material to Inteva and formed the basis on which Inteva entered into the Purchase Order with Advanex.

62. In material breach of its express warranties, Advanex supplied non-conforming Springs to Inteva.

63. Advanex received actual, timely notice of the nonconformities and its breach of express warranties.

64. Under Section 27 of the Inteva Terms, Advanex is liable for all costs, expenses, damages, and attorney fees incurred by Inteva with respect to the warranty claims and campaigns.

65. As a direct and proximate result of Advanex's material breaches of its express warranties, Inteva has suffered damages, and continues to suffer damages, including, but not limited to, warranty liability, sorting costs, harm to its reputation in the marketplace, loss of profits, diminution of value, costs associated with identifying and correcting the failures caused by the defective Springs and attorneys' fees and expenses under the contract, in an amount to be proved at trial, but certainly in excess of $1,881,945.

**COUNT III - BREACH OF IMPLIED WARRANTIES**

66. Inteva incorporates all prior paragraphs of its complaint as if set forth here fully.

67. Pursuant to the Uniform Commercial Code § 2-314, codified at MCL § 440.2314, Advanex's sale of Springs was accompanied by an implied warranty of merchantability.

68. Pursuant to Uniform Commercial Code § 2-315, codified at MCL § 440.2315, Advanex's sale of Springs was accompanied by an implied warranty of fitness for the particular purpose for the Springs.

69. Advanex was aware of the intended and particular purposes for the Springs, including Inteva's incorporation into automotive latching systems, and Inteva relied upon Advanex's skill or judgment to manufacture suitable Springs for this purpose.

70. Pursuant to the implied warranty of fitness for the purpose, Advanex warranted the Springs were fit and sufficient for their intended and particular purposes.

71. Advanex breached its implied warranties of merchantability and fitness for a particular purpose by, among other things, manufacturing and supplying non-conforming Springs which failed to function in a material, significant manner.

72. Advanex received actual, timely notice of the nonconformities and its breach of implied warranties.

73. Under Section 27 of the Inteva Terms, Advanex is liable for all costs, expenses, damages, and attorney fees incurred by Inteva with respect to the warranty claims and campaigns.

74. As a direct and proximate result of Advanex's breaches of its implied warranties, Inteva has suffered damages, and continues to suffer damages, including, but not limited to, warranty liability, campaign costs, sorting costs, harm to its reputation in the marketplace, loss of profits, diminution of value, costs associated with identifying and correcting the failures caused by the defective Springs and

attorneys' fees and expenses under the contract, in an amount to be proved at trial, but certainly in excess of $1,881,945.

## COUNT IV – DECLARATORY JUDGMENT

75. Inteva incorporates all prior paragraphs of its complaint as if set forth here fully.

76. Pursuant to Section 10 of the Inteva Terms, Advanex expressly warranted the Springs would be free from defects, be fit for the specific purpose intended by Inteva and any customer of Inteva, and conform to specifications, drawings, samples, and other applicable descriptions. Exhibit B, §10(A).

77. Advanex further agreed that the Springs would comply with Inteva's quality requirements. Exhibit B, §8.

78. By supplying non-conforming Springs that included a leg bend that allowed the spring leg to rise on the coupling lever post and were defective, Advanex has: (1) failed to perform under the Purchase Order; and (2) breached its warranty obligations to Inteva.

79. Under Section 11 of the Inteva Terms, Advanex was, and is, contractually required to "indemnify and defend [Inteva] against third-party claims or demands for injury or death to persons, property damage, economic loss, and any resulting damages, losses, costs, and expenses (including reasonable legal fees), if and to the extent caused by [Advanex's] (or any of [Advanex's] suppliers or

contractors) defective design or manufacture of Products or provision of Services regardless of whether the claim or demand arises under tort, contract, strict liability, or other legal theories, services or its negligent acts or omissions in its performance under the Contract." Exhibit B, §11.

80. Inteva has incurred and continues to incur substantial damages as a direct and proximate result of Advanex's failure to meet its obligations under the Inteva Terms, including, but not limited to, financial exposure resulting from warranty claims related to Advanex's non-conforming Springs.

81. These warranty claims and campaign costs that Inteva will incur as a result of Advanex's failure to meet its obligations under the Inteva Terms will continue to grow after the filing of this Complaint.

82. Under Section 27 of the Inteva Terms, Advanex is liable for all costs, expenses, damages, and attorney fees incurred by Inteva with respect to the warranty claims and campaigns.

83. Pursuant to Advanex's indemnification obligations under the Inteva Terms, Advanex must indemnify and hold Inteva harmless for Inteva's losses due to Advanex's failure to perform under the Purchase Order and Advanex's breach of its warranty obligations, including, but not limited to, any monetary payment(s) Inteva must make to its OEM customer for serving and replacing the failed parts and warranty claim liability.

84. Advanex has failed to comply with its warranty obligations, refuses to acknowledge liability for the defective Springs, and refuses to indemnity Inteva for the costs, expenses, damages, and attorney fees Inteva has incurred, and the costs, expenses, damages, and attorney fees Inteva will incur in the future, as a result of Advanex's failure to perform under the Purchase Orders and breaches of its warranty obligations.

85. As such, an actual controversy exists between the parties regarding Advanex's obligations and liability with respect to the non-conforming Springs under the parties' contract.

86. Accordingly, Inteva seeks, under 28 U.S.C. § 2201, a declaration from this Court that Advanex is liable for, and required to indemnify Inteva for, all costs, expenses, damages, and attorney fees Inteva has incurred as of the date of the filing of this Complaint, and all costs, expenses, damages, and attorney fees Inteva incurs in the future, as a result of Advanex's supply of nonconforming Springs and breach of warranties, including but not limited to the costs of warranty claims, campaigns, and any recalls opened by Inteva's customer.

**COUNT V – ADVANEX'S INDEMNIFICATION OF INTEVA**

87. Inteva incorporates all prior paragraphs of its complaint as if set forth here fully.

88. Pursuant to Section 11 of the Inteva Terms, Advanex was, and is, contractually required to "indemnify and defend [Inteva] against third-party claims or demands for injury or death to persons, property damage, economic loss, and any resulting damages, losses, costs, and expenses (including reasonable legal fees), if and to the extent caused by [Advanex's] (or any of [Advanex's] suppliers or contractors) defective design or manufacture of Products or provision of Services regardless of whether the claim or demand arises under tort, contract, strict liability, or other legal theories, services or its negligent acts or omissions in its performance under the Contract." Exhibit B, §11.

89. By supplying non-conforming Springs that included a leg bend that allowed the spring leg to rise on the coupling lever post and were defective, Advanex has: (1) failed to perform under the Purchase Order; and (2) breached its warranty obligations to Inteva.

90. Inteva has incurred and continues to incur substantial damages as a direct and proximate result of Advanex's failure to meet its obligations under the Inteva Terms, including, but not limited to, financial exposure resulting from warranty claims related to Advanex's non-conforming Springs.

91. Under Section 27 of the Inteva Terms, Advanex is liable for all costs, expenses, damages, and attorney fees incurred by Inteva with respect to the warranty claims and campaigns.

92. Pursuant to Advanex's indemnification obligations under the Inteva Terms, Advanex must indemnify and hold Inteva harmless for Inteva's losses due to Advanex's failure to perform under the Purchase Order and Advanex's breach of its warranty obligations, including, but not limited to, any monetary payment(s) Inteva must make to its OEM customer for serving and replacing the failed parts and warranty claim liability.

## **PRAYER FOR RELIEF**

WHEREFORE, Inteva asks the Court to enter judgment against Advanex providing the following relief:

A. An award of monetary damages in favor of Inteva sufficient to compensate it for all forms of economic loss, including, without limitation, actual, special, incidental, consequential, lost goodwill, exemplary, and punitive damages;

B. An award of enhanced damages as may be allowed by law;

C. A declaration under 28 U.S.C. § 2201 that Advanex is liable for, and required to indemnify Inteva for, any and all costs, expenses, damages, and attorney fees Inteva has incurred as of the date of filing of this Complaint, or incurs in the future, as a result of Advanex's supply of nonconforming Springs and breach of warranties, including but not limited to the costs of warranty claims, campaigns, and any recalls opened by Inteva's customer.

D. An award of Inteva's expenses, including, reasonable attorney's fees and costs; and

E. All other relief as permitted under the law.

Respectfully submitted,

BODMAN PLC

By: */s/ Joseph J. Shannon*

Joseph J. Shannon (P38041)
Emily A. Cross (P85911)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
*Attorneys Inteva Products, LLC*

Dated: May 15, 2026